IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-00564-REB-CBS

FRED MARK BURNETT, and
CAROL ANN BURNETT,
        Plaintiffs,
v.

B. DOUG GEORGE, an individual,
DANIEL P. POWELL, an individual,
ROBERT L. AMREIN, an individual, and
KAREN L. AMREIN, an individual,
        Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Craig B. Shaffer

        This civil action comes before the court on:

        1.      "Defendant Daniel Powell's Motion [to] Dismiss Pursuant to Fed. R. Civ.
Pro. 9(b) and 12(b)(6)" (filed August 3, 2006 ) (doc. # 76);

        2.      "Defendant George's Renewed Motion for Summary Judgment" (filed
August 3, 2006) (doc. # 74);

        3.      "Plaintiff Burnetts' Motion this court under Authority of F.R.Civ. P. R
60(B)(4) for Vacation of the Judgments/Order in Colorado State Court Cases 2001C5
and 2004CV03 [sic]" (filed July 6, 2006) (doc. # 62);

        4.      "Defendants Robert L. and Karen L. Amrein's Motion for Summary
Judgment" (filed June 6, 2006) (doc. # 41);

        5.      "Defendant Daniel Powell's Motion for Summary Judgment" (filed May 31,
2006) (doc. # 34);

        6.      "Defendant Doug B. George's Renewed Motion for Summary Judgment . .
." (filed May 4, 2006) (doc. # 19); and

1

      7.     "Plaintiffs' Burnetts' Motion to Lift Order Staying Discovery and Grant Leave to Engage in Discovery . . ." (filed August 30, 2006) (doc. # 94).

Pursuant to the Order of Reference dated March 30, 2006 (doc. # 2) and the

memoranda dated May 8, 2006 (doc. # 20), June 1, 2006 (doc. # 37), June 7, 2006

(doc. # 44), August 4, 2006 (doc. # 79), and September 6, 2006 (doc. # 96), these

motions were referred to the Magistrate Judge.  The court has reviewed the motions,

the corresponding responses and replies (docs. # 51, # 55, # 61, # 70, # 71, # 72, # 78,

# 86, # 91, and # 95), the entire case file, and the applicable law and is sufficiently

advised in the premises.[1]


I.     Statement of the Case

      The Amreins and the Burnetts are owners of adjoining land in the Aspen Springs

subdivision in Conejos County, Colorado.  (*See Burnett v. Amrein* (Colo. App. No.

05CA1212, June 15, 2006) (not published pursuant to C.A.R. 35(f)) (Exhibit A-13 (doc.

# 82))).  Defendants George and Powell are attorneys who represented the Amreins in

litigation in the County and State Courts.  On January 12, 2001, the Amreins brought a

civil action, Case No. 2001 C 05, in the County Court for the County of Conejos

seeking a preliminary and permanent injunction against the Burnetts for violation of

certain protective covenants which run with the land located within the subdivision.

(Exhibit B to doc. # 35 at p. 1). "Specifically, the Amreins alleged that the Burnetts were

in violation of two provisions of the Covenants pertaining to the keeping of livestock,

and pertaining to the use of reserved easements within the subdivision."  (Exhibit B to

doc. # 35 at p. 1).  The County Court ruled that it had subject matter jurisdiction over the keeping of livestock issue raised in the Complaint.  (Exhibit E to doc. # 35 at p. 3). The County Court permanently enjoined the Burnetts "from keeping horses upon property located within the subdivision."  (Exhibit E to doc. # 35 at p. 3).  That Order was not appealed by the Burnetts.  (Exhibit E to doc. # 35 at p. 3).

The County Court further ruled that it did not have subject matter jurisdiction over the easement encroachment issue.  (Exhibit E to doc. # 35 at p. 3).  On May 24, 2002, the Conejos County District Court overruled the County Court, holding that the County Court had subject matter jurisdiction over the easement encroachment issue. (Exhibit E to doc. # 35 at p. 4).  The  District Court's ruling was not appealed by the Burnetts.  (Exhibit E to doc. # 35 at p. 4).

On November 5, 2003, at the conclusion of a trial in Case No. 2001 C 05, the County Court ruled that it had subject matter jurisdiction to enforce the covenants under C.R.S. § 13-6-105(1)(f), ordered the Burnetts to remove all fences, gates and other obstructions from the easement area, and permanently enjoined the Burnetts from erecting any obstruction that may encroach upon the easement.  (Exhibit E to doc. # 35 at pp. 4, 11).  On or about January 15, 2004, the County Court awarded attorney fees and costs against the Burnetts in the amount of $21,500.28 "given that [the Burnetts'] defense in this action was substantially frivolous, substantially groundless and substantially vexatious; and inasmuch as [the Burnetts'] violations of the relevant Aspen Springs subdivision Protective Covenants in this respect were willful, knowing, not in good faith, and continued with full knowledge of the violations before this

litigation began and throughout this litigation."  (Exhibit F to doc. # 35 at p. 1).  "The

Burnetts filed an appeal in the Conejos County District Court, Case No. 2004 CV 03."

(Exhibit B to doc. # 35 at p. 3).

"On August 12, 2004, the Burnetts filed a Complaint in the Conejos County

District Court, Case No. 2004 CV 27, seeking an Order vacating the Judgment of the

County Court entered on November 18, 2003. . . ."  (Exhibit B to doc. # 35 at p. 4).  On

November 22, 2004, the District Court stayed the proceedings in Case No. 2004 CV 27,

pending a ruling in Case No. 2004 CV 03.  (Exhibit B to doc. # 35 at p. 4).

On March 3, 2005, the District Court affirmed the County Court in Case No. 2004

CV 03 in all respects, with the exception of a portion of the attorney fees the County

Court awarded to the Amreins.  (Exhibit G to doc. # 35 at p. 1).  On remand, on

September 13, 2005, the County Court entered judgment for attorney fees and costs

against the Burnetts in the amount of $29,039.26 plus interest.  (Exhibit J to doc. # 35).

The District Court granted summary judgment against the Burnetts in Case No.

2004 CV 27 on April 29, 2005.  (Exhibit K to doc. # 35). On June 10, 2005, the District

Court denied the Burnetts' Motion for Reconsideration.  (Exhibit B to doc. # 35 at p. 5).

The Burnetts appealed the judgment in Case No. 2004 CV 27 by filing a Notice of

Appeal in 05CA1212.  (*See* Exhibit A-13 (doc. # 82)).  The Colorado Court of Appeals

affirmed the District Court on June 15, 2006.  (*See* Exhibit A-13 (doc. # 82)).  As of the

date of this Recommendation, the time period for filing a petition for certiorari has not

expired.

The Burnetts appealed the judgment in Case No. 2004 CV 03 by filing a Notice

of Appeal in 05CA0674.  (Exhibit B to doc. # 35 at p. 4).  On May 18, 2005, the

Colorado Court of Appeals dismissed the appeal for lack of jurisdiction.  (Exhibit H to

doc. # 35).  The Burnetts filed a petition for a stay in the Colorado Supreme Court

(Case No. 2005 SC 0191) that was denied on July 6, 2005.  (Exhibit I to doc. # 35).

　　　The Burnetts appealed the County Court judgment for attorney fees and costs in

the amount of $29,039.26 (Exhibit J to doc. # 35) by filing Case No. 2005 CV 49 in the

District Court for Conejos County.  (*See* Exhibit D to doc. # 35 at ¶ 5).  The Amreins

filed a motion to dismiss that appeal based upon the Burnetts' failure to file an appeal

bond.  The District Court directed the Burnetts to post bond pursuant to C.R.C.P.

411(a) in the sum of $29,039.26 within 30 days of March 3, 2006.  (*See* Exhibit D to

doc. # 35 at ¶ 10).  Case No. 2005 CV 49 in the District Court for Conejos County is still

ongoing.

　　　The Burnetts commenced this civil action on March 28, 2006 by filing a *pro se*

Complaint alleging claims under the Racketeer Influenced and Corrupt Organizations

Act ("RICO"), Title 18 U.S.C. §§ 1964(a) and (c).  The Burnetts filed an Amended

Complaint on April 4, 2006 (doc. # 3).  With leave of court, the Burnetts filed a Second

Amended Complaint ("SAC") on July 20, 2006 (doc. # 67).  The Burnetts allege that

Defendants violated §§ 1964(a) and (c) by their attempts to collect the judgment for

approximately $30,000.00 dollars of attorney fees and costs.  (SAC at p. 1).

Defendants have moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and for

summary judgment pursuant to Fed. R. Civ. P. 56.

II.    Standard of Review

Rule 12(b)(6) states that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  When reviewing a Rule 12(b)(6) motion to dismiss, the court accepts the well-pleaded allegations of the complaint as true and construes them in the light most favorable to the plaintiff.  *Ramirez v. Dep't of Corrections*, 222 F.3d 1238, 1240 (10th Cir. 2000) (citation omitted).  A complaint should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Ramirez*, 222 F.3d at 1240 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

Under Fed. R. Civ. P. 56(c),

summary judgment is proper only if the evidence, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact, and the moving party is entitled to summary judgment as a matter of law.  A material" fact is one that might affect the outcome of the suit under the governing law,  and a genuine issue is one where the evidence is such that a reasonable jury could return a verdict for the nonmoving party.

*Stearns v. McGuire*, 354 F. Supp. 2d 1188, 1189 (D. Colo. 2004) (internal quotation marks and citations omitted), *aff'd*, 154 Fed. Appx. 70 (10th Cir. 2005).[2]


III.    RICO

The RICO statute, 18 U.S.C. §§ 1961-1968, provides for civil and criminal remedies for racketeering activities.  "RICO allows private parties to bring civil suits for treble damages."  *Deck v. Engineered Laminates*, 349 F.3d 1253, 1256-57 (10th Cir.

2003) (citing 18 U.S.C. § 1964(c)).  "Racketeering activity" encompasses a number of

crimes identified in the statute, including mail fraud. 18 U.S.C. § 1961(1).  "These

underlying acts are referred to as predicate acts, because they form the basis for

liability under RICO." *Tal v. Hogan*, 453 F.3d 1244, 1261 (10th Cir. 2006) (internal

quotation marks and citation omitted).  Section 1962 defines the criminal violations

necessary for the recovery of civil damages under § 1964(c).  A person need not "be

formally convicted of any predicate act before liability under 18 U.S.C. § 1962(b) may

attach." *Tal*, 453 F.3d at 1262 (internal quotation marks and citation omitted).  "To

state a RICO claim, a plaintiff must allege that the defendant violated the substantive

RICO statute, 18 U.S.C. § 1962, by setting forth four elements: (1) conduct (2) of an

enterprise (3) through a pattern (4) of racketeering activity." *Deck*, 349 F.3d at 1256-57

(internal quotation marks and citations omitted).


A.      Failure to Allege a RICO Violation

        The Burnetts appear to allege violation of § 1962(b).  (*See* SAC at ¶ 1).

        It shall be unlawful for any person through a pattern of racketeering
        activity . . . to acquire or maintain, directly or indirectly, any interest in or
        control of any enterprise which is engaged in, or the activities of which
        affect, interstate or foreign commerce.

18 U.S.C. § 1962(b).


        1.      RICO Enterprise

        "The first rule of pleading a RICO claim is that the plaintiff must identify the

enterprise." *Jennings v. Emry*, 910 F.2d 1434, 1439-40 (7th Cir. 1990).  *See also American Buying Ins. Services, Inc. v. S. Kornreich & Sons, Inc.*, 944 F. Supp. 240, 246 (S.D.N.Y. 1996) (RICO plaintiff must adequately allege an enterprise in order to state a claim under either Section 1962(b) or (c)). An "enterprise" is defined under RICO to include "any individual partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  An enterprise "is an ongoing 'structure' of persons associated through time, joined in purpose, and organized in a manner amenable to [hierarchal] or consensual decision-making."  *Jennings*, 910 F.2d at 1440 (citations omitted).  *See also United States Fire Insurance Co. v. United Limousine Service, Inc.*, 303 F. Supp. 2d 432, 446 (S.D.N.Y. 2004) ("An enterprise is defined as an entity, . . . a group of persons associated together for the common purpose of engaging in a course of conduct") (internal quotation marks and citations omitted).

        "To allege an enterprise within the meaning of RICO, there must be a group of persons associated together for a common purpose of engaging in a course of conduct . . . [It is] proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit."  *Seidl v. Greentree Mortgage Co.*, 30 F. Supp. 2d 1292, 1305 (D. Colo. 1998) (internal quotation marks and citation omitted).  "Any RICO enterprise must consist of more than a group of people who get together to commit a pattern of racketeering activity."  *Starfish Investment Corp. v. Hansen*, 370 F. Supp. 2d 759, 769 (N.D. Ill. 2005) (citation omitted).  "A RICO complaint must allege that the defendants were conducting the

enterprise's affairs, rather than their own affairs." *Starfish*, 370 F. Supp. 2d at 771.

The SAC does not contain allegations, even in conclusory form, that there was a common purpose among the Defendants or any sort of decision-making mechanism for conducting an enterprise's affairs on a continuing basis.  At best, the SAC alleges that George and Powell attempted to collect a judgment that the Burnetts allege is invalid. These allegations do not support the existence of an enterprise with shared or common purposes, continuity of structure and personnel, and a structure distinct from that inherent in the alleged pattern of racketeering activity.  *See United States v. Turkette*, 452 U.S. 576, 583 (1981) (enterprise must be an "entity separate and apart from the pattern of racketeering activity in which it engages");  *United States v. Irizarry*, 341 F.3d 273, 286 (3d Cir. 2003) (requiring that the enterprise be an ongoing organization with a framework for making or carrying out decisions, that the various associates function as a continuing unit, and that the enterprise is separate and apart from the pattern of racketeering activity) (citation omitted), *cert. denied*, 540 U.S. 1140 (2004);  *United States v. Parise*, 159 F.3d 790, 795 (3d Cir. 1998) (enterprise must maintain a shared organizational pattern and system of authority) (citation omitted).  Even "conspiring to commit a fraud is not enough to trigger [RICO] if the parties are not organized in a fashion that would enable them to function as a racketeering organization for other purposes."  *VanDenBroeck v. CommonPoint Mortgage Co.*, 210 F.3d 696, 699 (6th Cir. 2000).  "Further, an attorney does not participate in the operation or management of an enterprise by offering legal advice or otherwise represent[ing] a client.  *Seidl*, 30 F. Supp. 2d at 1305  (citation omitted).  The activity alleged in the SAC may be interpreted

9

as nothing more than a legitimate and singular endeavor to collect a judgment.  In sum, the SAC does not allege an enterprise under RICO.

2.      Pattern of Racketeering under § 1962

"[T]he complaint must demonstrate sufficient relationship and continuity among the predicate acts to qualify as a pattern of racketeering activity within the meaning of the RICO statute." *Starfish*, 370 F. Supp. 2d at 771  (citation omitted).  "[A] complaint asserting a pattern of racketeering activity must allege facts from which such a continuous and related course of conduct - one indicating the threat of continuing criminal activity - reasonably may be inferred." *Jennings*, 910 F.2d at 1439.  *See also St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 439 (5th Cir. 2000) ("to state a RICO claim there must be: (1) a *person* who engages in (2) a *pattern of racketeering activity* (3) connected to the acquisition, establishment, conduct, or control of an *enterprise*") (emphasis in original) (internal quotation marks and citation omitted).  "In order to demonstrate a pattern of racketeering under 18 U.S.C. § 1962, a plaintiff must establish that the conduct in question amounts to, or constitutes a threat of, continuing racketeering activity." *Protter v. Nathan's Famous Systems, Inc.*, 925 F. Supp. 947, 953 (E.D.N.Y. 1996).  "A pattern of racketeering activity must include commission of at least two predicate acts." *Deck*, 349 F.3d at 1256-57 (citation omitted).

Several related "predicate acts" do not establish a pattern when they are part of an alleged "single effort" to effectuate one wrong, such as the obtaining of a contract or an act of insurance fraud.  *See Scottsdale Insurance Co. v. Dorman*, 153 F. Supp. 2d

852, 857 (E.D. La. 2001) (granting motion to dismiss RICO claim where all alleged predicate acts were part of or directed toward a single scheme of insurance fraud against one insurer over a period of 6 months). The Burnetts allege that each of the predicate acts was perpetrated solely to allow the Defendants to collect a judgment that the Burnetts contend is invalid.  Attempts to collect one judgment do not "constitute a distinct threat of long-term racketeering activity." *Tal*, 453 F.3d at 1268 (internal quotation marks and citation omitted).  Further, the SAC is devoid of factual allegations as to any conduct engaged in by the Amreins that would qualify as predicate acts within the meaning of 18 U.S.C. § 1961.  Because the SAC does not allege a "pattern" of racketeering activity, it is properly dismissed.

3.      Fraud under RICO

All of the predicate acts pled in the SAC are based upon fraud.  (*See* SAC at ¶¶ 14-38).  "Rule 9(b) is applicable to RICO predicate acts based on fraud." *Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1362 (10th Cir. 1989). *See also In Re Sattler's*, 73 B.R. 780, 786 (S.D.N.Y. 1987) ("the pleading of predicate acts for a RICO claim must meet the particularity requirements of Rule 9(b), Fed. R. Civ. P., where the acts are based in fraud") (citations omitted).

> "[W]e believe that the threat of treble damages and injury to reputation which attend RICO actions justify requiring plaintiff to frame its pleadings in such a way that will give the defendant, and the trial court, clear notice of the factual basis of the predicate acts. We believe this is particularly important in cases where the predicate fraud allegations provide the only link to federal jurisdiction. Thus, we hold that Rule 9(b) requires particularity in pleading RICO mail and wire fraud."

*Cayman Exploration*, 873 F.2d at 1362.

Fed. R. Civ. P. 9(b) requires that

[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.

To meet the Rule 9(b) standard, a plaintiff must identify the circumstances constituting the fraud. *Broadview Financial, Inc. v. Entech Management Services Corp.*, 859 F. Supp. 444, 449 (D. Colo. 1994) (citation omitted). Specifically, a plaintiff must (1) identify the particular individuals with whom he dealt; (2) designate the occasion on which the fraudulent statements were made, and by whom; and (3) describe what misstatements and half-truths were expressed and how. *Id. See also Brooks v. Bank of Boulder*, 891 F. Supp. 1469, 1476 ("In pleading a claim under RICO, . . . Plaintiffs must set forth the time, place and contents of the false representation, the identity of the party making the false statement and the consequences thereof") (internal quotation marks and citation omitted); *Kaiser v. Bowlen*, 181 F. Supp. 2d 1200, 1203 (D. Colo. 2002) ("The complaint must contain allegations of the specific representations alleged to be fraudulent, where and when the statements were made, the particular defendant making the misrepresentations, and what was false about them") (citation omitted).

The Burnetts have not adequately pled the elements of fraud. The SAC lacks specific allegations regarding the time, place, and content of the alleged fraud. The Burnetts have not alleged what documents were sent, to whom the documents were sent, the contents of the documents, or how the documents were fraudulent. There are

no specific allegations of fraud against the Amreins.  The Burnetts' allegations are stated in the most vague and conclusory manner.  This is insufficient to meet the requirements that a RICO claim based on fraud be stated with particularly as to each defendant.  Because the SAC does not allege fraud with the particularity required in pleading RICO claims, it is properly dismissed.

4.      Mail Fraud

The Burnetts allege that Defendants engaged in mail fraud.  (*See* SAC at ¶¶ 8, 9, 11).  "The elements of federal mail fraud as defined in 18 U.S.C. § 1341 are (1) a scheme or artifice to defraud or obtain property by means of false or fraudulent pretenses, representations, or promises, (2) an intent to defraud, and (3) use of the mails to execute the scheme." *United States v. Welch*, 327 F.3d 1081, 1104 (10th Cir. 2003) (citation omitted).  *See also BancOklahoma Mortgage Corp. v. Capital Title Co., Inc.*, 194 F.3d 1089, 1102 (10th Cir. 1999) (same) (internal quotation marks and citation omitted).

The particularity requirement of Rule 9(b) applies to civil RICO claims for which mail fraud is the predicate illegal act.  *Tal*, 453 F.3d at 1263 (citations omitted).  In order to satisfy the particularity requirements of Rule 9(b) where, as here, mail fraud is alleged as a predicate act of a RICO claim, "the plaintiff must specify the time, place, and content of the alleged false representation and describe with particularity any allegedly fraudulent transaction, and how the particular mailing or transactions furthered the fraudulent scheme." *Weizmann v. Kirkland and Ellis*, 732 F. Supp. 1540,

13

1546 (D. Colo. 1990). "In addition, a plaintiff asserting fraud must also identify the purpose of the mailing within the defendant's fraudulent scheme and allege facts that give rise to a strong inference of fraudulent intent." *Kashelkar v. Rubin & Rothman*, 97 F. Supp. 2d 383, 393 (S.D.N.Y. 2000) (citation omitted).

Mail fraud is not committed simply by sending false statements through the mail. Instead, the mails must have been used to further a scheme to defraud or obtain money or property through false pretenses. *Atlas Pile Driving Co. v. DiCon Financial Co.*, 886 F.2d 986, 991 (8th Cir. 1989). The absence of specific intent to defraud is a complete defense to mail fraud. *United State v. Ashman*, 979 F.2d 469, 480 (7th Cir. 1993) (citation omitted. *See also United States v. Dunn*, 961 F.2d 648, 650 (7th Cir. 1992) ("Good faith, or the absence of an intent to defraud, constitutes a complete defense to a charge of mail fraud") (citation omitted). General allegations such as that transfers of funds were accomplished through the use of the mail or that the mails were used in connection and in furtherance of the enterprise are insufficient to meet the particularity requirements of Rule 9(b). *In Re Sattler's*, 73 B.R. at 786 (citation omitted).     The SAC does not satisfy the requirements for alleging mail fraud under RICO. The Burnetts merely allege that unidentified mailings were false. The allegations do not specify what each Defendant is alleged to have communicated, how those communications were false, and how, if at all, the Burnetts relied on them. *See Kashelkar*, 97 F. Supp. 2d at 393 (allegations giving no particulars about what were the alleged statements, who made them, when and where they were made, what role they played in the scheme, or any facts which give rise to an inference of fraudulent intent"

14

failed to satisfy pleading requirements of a RICO claim) (citation omitted).

The Burnetts do not specifically allege predicate acts of mail fraud.  (*See* SAC at ¶¶ 14-38 (Defendants George and Powell "conduct[ed] fraud" and "intent to defraud")). There is no allegation that the Amreins used the mail to defraud Plaintiffs.  The SAC does not allege with particularity how otherwise routine mailings furthered a fraudulent scheme.  *See BancOklahoma*, 194 F.3d at 1102 (activities that would have been performed in normal course of business failed to establish that title companies directed activities of or participated in operations of alleged RICO enterprise).

Among the predicate acts of fraud and mail fraud alleged by the Burnetts is the preparation by George and Powell of documents "alleging that Burnetts were liable to Amreins [sic]." (SAC at ¶ 14).  The allegations in the SAC do not support a claim that George's and Powell's actions were other than completely lawful, legitimate conduct of attorneys representing their clients in pending litigation.  *See D'Orange v. Feely*, 877 F. Supp. 152, 156 (S.D.N.Y. 1995) (dismissing RICO claims against attorneys who had allegedly sent fraudulent accountings through the mail and holding that the attorney's actions "cannot be considered predicate acts because they constitute legitimate conduct of attorneys acting on behalf of a client in the course of pending litigation"); *Morin v. Trupin*, 711 F. Supp. 97, 105 (S.D.N.Y. 1989) (holding that letter sent by attorney-defendants to plaintiffs demanding payment on notes which defendants allegedly knew to be unenforceable could not constitute RICO predicate act of mail fraud and that "Congress could not have intended that the mail fraud statute sweep up correspondence between attorneys, dealing at arm's length on behalf of their parties,

15

concerning an issue in pending litigation") (internal quotation marks and citation omitted);  *Paul S. Mullin & Associates v. Bassett*, 632 F. Supp. 532, 540 (D. Del. 1986) (finding "absurd plaintiffs' apparent suggestion that a lawyer's act in posting a letter which states a client's legal position in a dispute can constitute mail fraud") (citation omitted).

The court will not imply or read mail fraud into the SAC where it is not specifically alleged.  *Giuliano v. Fulton*, 399 F.3d 381, 388 (1st Cir. 2005) (quoting *Fleet Credit Corp. v. Sion*, 893 F.2d 441, 444 (1st Cir. 1990) (we have "no duty to conjure up unpled allegations in order to bolster the plaintiff's chances of surviving a 12(b)(6) motion to dismiss") (internal quotation marks omitted)).  The SAC does not adequately allege mail fraud and accordingly does not state a claim for violation of RICO, the only basis for this civil action.

5.     Reliance Requirement under RICO

Reliance is an element of a civil RICO claim.  *See City of New York v. Cyco.Net, Inc.*, 383 F. Supp. 2d 526, 559 (S.D.N.Y. 2005) (in order to establish the required causal connection in the context of an alleged RICO violation based on an act of mail fraud, plaintiffs must demonstrate that they relied on the alleged misrepresentations) (citations omitted);  *Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539 (5th Cir. 2001) (in civil RICO claims in which fraud is alleged as a predicate act, reliance on the fraud must be shown) (citations omitted);  *VanDenBroeck*, 210 F.3d at 701 (under RICO, an element of both mail fraud and wire fraud is reliance on the fraudulent

16

representation).

The SAC includes a single conclusory allegation that the Burnetts relied on the alleged misrepresentations by Defendants.  (*See* SAC at ¶ 9).  Throughout the extensive underlying and ongoing litigation in state court, the Burnetts have challenged the collection of the judgment against them, belying any allegation of their reliance on Defendants' alleged misrepresentations.  For this reason also, the SAC is properly dismissed.

6.     Section 1962(b)

The first element of a Section 1962(b) claim "requires sufficient allegations of an interest in or control of an enterprise."  *Tal*, 453 F.3d at 1268 (internal quotation marks omitted).  " 'Interest in or control of' requires more than a general interest in the results of its actions, or the ability to influence the enterprise through deceit."  *Id.* (citation omitted).  "Rather, it requires some ownership of the enterprise or an ability to exercise dominion over it."  *Id.*  "To survive a motion to dismiss, the complaint must specify the connection between defendants' racketeering activity and their interest in the . . . enterprise."  *Protter*, 925 F. Supp. at 955 (internal quotation marks and citations omitted).

The SAC lacks any allegations regarding acquisition or maintenance of an interest in an enterprise.  The Burnetts have not pled any specific facts that Defendants acquired or maintained an enterprise through illegitimate acquisitions.  The SAC does not allege a nexus between control of a named enterprise and alleged racketeering

activity.  The SAC does not allege any "facts would establish either that the individual

defendants had acquired or maintained control of [an enterprise] through a pattern of

racketeering."  *Protter*, 925 F. Supp. at 955.  For this reason, the Burnetts' RICO claims

pursuant to § 1962(b) are properly dismissed.


IV.     Conclusion

        The SAC does not state any claim upon which relief may be granted.  The SAC

is the Burnetts' third attempt to comply with the rules of this court and the Federal Rules

of Civil Procedure.  Defendants raised numerous legal challenges to the Amended

Complaint.  Even after Defendants filed motions to dismiss and for summary judgment

addressed to the Amended Complaint , the court afforded the Burnetts an opportunity

to further amend their claims.  At the hearing held on July 6, 2006, the court notified the

Burnetts of the legal deficiencies of their claims.  After ample warning of the

deficiencies of their claims, the Burnetts filed a SAC that suffers from the same

deficiencies.

        Under the circumstances of this case, it is appropriate for the court to

recommend dismissal of the SAC on the merits and with prejudice.  Even *pro se* parties

are not permitted an infinite number of attempts to comply with the rules of the court.

The Burnetts do not appear willing or able to prepare a proper complaint.  Defendants

have offered legitimate reasons why the SAC should be dismissed.  When the state

court "proceedings are final," the federal court will likely lack of subject matter

jurisdiction under the *Rooker-Feldman* doctrine.[3]  For these reasons, the court

recommends that the SAC be dismissed with prejudice.[4]


V.     Burnetts' Motion to Vacate

The Burnetts ask this court, apparently pursuant to Fed. R. Civ. P. 60(b)(4), to

vacate "void" judgments entered by the state courts. (*See* Burnett's Motion (filed July

6, 2006) (doc. # 62), Burnetts' Notice (filed July 19 2006) (doc. # 66)). The Burnetts

argue that the state courts did not have jurisdiction to enter the judgments against

them. (*See id.*).

Fed. R. Civ. P. 60(b) provides in part:

> On motion and upon such terms as are just, the court may relieve a party
> or a party's legal representative from a final judgment, order, or
> proceeding for the following reasons: . . .  (4) the judgment is void.

Rule 60(b)(4) provides for relief from a judgment on the ground that "the judgment is

void." Fed. R. Civ. P. 60(b)(4). "A judgment is void . . . if the court which rendered it

lacked jurisdiction of the subject matter, or of the parties, or acted in a manner

inconsistent with due process of law." *United States v. Buck*, 281 F.3d 1336, 1344

(10th Cir.2002) (quotation omitted).

The Burnetts seek relief in the federal district court for a judgment that was

rendered in state court. Rule 60(b) does not authorize a federal district court to relieve

the Burnetts of a judgment entered in state court. The Burnetts have raised in the state

courts the same arguments raised in their Motion to Vacate. A motion under Rule 60(b)

cannot be used as a substitute for appeal. *Morris v. Adams-Millis Corp.*, 758 F.2d

1352, 1357 (10th Cir.1985). The Motion to Vacate is not properly brought in this court.

Further, the *Rooker-Feldman* doctrine provides that federal district courts lack jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp.*, 544 U.S. at 284. "The Rooker-Feldman doctrine is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Bolden v. City of Topeka, Kan.*, 441 F.3d 1129, 1142-43 (10th Cir. 2006) (internal quotation marks and citation omitted). "*Rooker-Feldman* does not bar federal-court claims that would be identical even had there been no state-court judgment; that is, claims that do not rest on any allegation concerning the state-court proceedings or judgment." *Bolden*, 441 F.3d at 1145. "Appellate review – the type of judicial action barred by Rooker-Feldman – consists of a review of the proceedings already conducted by the lower tribunal to determine whether it reached its result in accordance with law." *Bolden*, 441 F.3d at 1143. "A suit in federal district court to litigate the issue already decided by the [Colorado courts] in essence would be an attempt to obtain direct review" of the decisions in the Colorado courts. *Bolden*, 441 F.3d at 1144 (internal quotation marks and citation omitted). The Burnetts' motion to vacate "void" judgments entered by the state courts is essentially an appeal of state court judgments. The relief sought by the Burnetts runs afoul of the *Rooker-Feldman* doctrine.

20

Accordingly, IT IS RECOMMENDED that:

1.        "Defendant Daniel Powell's Motion [to] Dismiss Pursuant to Fed. R. Civ. Pro. 9(b) and 12(b)(6)" (filed August 3, 2006 ) (doc. # 76) be GRANTED;

2.        "Defendant George's Renewed Motion for Summary Judgment" (filed August 3, 2006) (doc. # 74) be GRANTED IN PART;

3.        "Plaintiff Burnetts' Motion this court under Authority of F.R. Civ. P. R 60(B)(4) for Vacation of the Judgments/Order in Colorado State Court Cases 2001C5 and 2004CV03 [sic]" (filed July 6, 2006) (doc. # 62) be DENIED;

4.        "Defendants Robert L. and Karen L. Amrein's Motion for Summary Judgment" (filed June 6, 2006) (doc. # 41) be GRANTED IN PART;

5.        "Defendant Daniel Powell's Motion for Summary Judgment" (filed May 31, 2006) (doc. # 34) be GRANTED IN PART;

6.        "Defendant Doug B. George's Renewed Motion for Summary Judgment . . ." (filed May 4, 2006) (doc. # 19) be GRANTED IN PART;

7.        In light of this Recommendation, "Plaintiffs' Burnetts' Motion to Lift Order Staying Discovery and Grant Leave to Engage in Discovery . . ." (filed August 30, 2006) (doc. # 94) be DENIED; and

8.        This civil action be DISMISSED WITH PREJUDICE.


**Advisement to the Parties**

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings and

recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).

The district judge shall make a *de novo* determination of those specific portions of the proposed findings or recommendations to which specific objection is made. 28 U.S.C. § 636(b)(1).  A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.  *See In re Griego*, 64 F.3d at 583;  *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  The district judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1).

"[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *One Parcel of Real Property*, 73 F.3d at 1060.  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (district court's decision to review a magistrate's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to

preserve an issue for *de novo* review by the district court or for appellate review);

*International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52

F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the

magistrate's order, cross-claimant had waived its right to appeal those portions of the

ruling);  *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to

file objections, plaintiffs waived their right to appeal the magistrate's ruling).  *But see,*

*Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does

not apply when the interests of justice require review).

DATED at Denver, Colorado, this 12th day of September, 2006.

BY THE COURT:

*s/Craig B. Shaffer*
United States Magistrate Judge

1.      On August 24, 2006, the District Judge afforded the Burnetts until September 8, 2006 to re-file their reply to the Defendants' Responses (docs. # 70, # 71, and # 72). (*See* Minute Order (doc. # 92)).  The Burnetts filed their "First Amended Consolidated Reply" on September 5, 2006.  (*See* doc. # 95).

2.      In more than one filing, the Burnetts have asked the court to take judicial notice of facts.  (*See* docs. # 87, # 58).  Pursuant to Fed. R. Evid. 201, "[j]udicial notice is when a judge recognizes the truth of certain facts, which from their nature are not properly the subject of testimony, or which are universally regarded as established by common knowledge.  The recognition of certain facts by the judge is proper without proof because such facts are not subject to reasonable dispute."  *Meredith v. Beech Aircraft Corp.*, 18 F.3d 890, 895 (10th Cir. 19940 (footnote omitted).  "Judicial notice is appropriate where a matter is 'verifiable with certainty.'"  *York v. American Tel & Tel. Co.*, 95 F.3d 948, 958 (10th Cir. 1996).

The facts to which the Burnetts refer in their Notices are not appropriate for judicial notice because they are subject to dispute.  Further, judicial notice of the factual matters recited by the Burnetts is unnecessary because the court has and will consider all of the evidence presented by the parties as it relates to this civil action.  The Burnetts' request that the court take judicial notice of the referenced facts is inappropriate and unnecessary.

3.      Under the *Rooker-Feldman* doctrine, "a federal district court does not have subject matter jurisdiction to hear appeals from final judgments of state courts." *Guttman v. Khalsa*, 401 F.3d 1170, 1173 (10th Cir.), *judgment vacated on other grounds*, 126 S.Ct. 321 (2005).  The United States Supreme Court recently stated that the *Rooker-Feldman* doctrine precludes "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005).

The Burnetts "plainly" have "repaired to federal court to undo" the Colorado judgment against them. *Exxon Mobil*, 544 U.S. at 293.  *See, e.g.*, "Plaintiff Burnetts' Motion this Court under Authority of F.R.CIV.P. R 60(B)(4) for Vacation of the Judgments/Order in Colorado State Court Cases 2001C5 and 2004CV03" (doc. # 62) (Burnetts ask federal court "to vacate Colorado state court judgments/orders, November 18th 2003, January 20th 2004, March 7th 2005 and July 13th, 2005 in matters 2001C5 and 2004CV03").

However, "[t]he *Rooker-Feldman* doctrine only applies to cases brought after the state proceedings have ended." *Guttman*, 446 F.3d at 1031 (internal quotation marks and citation omitted).  The Burnetts have appealed the County Court judgment for attorney fees and costs in the amount of $29,039.26 (Exhibit J to doc. # 35) by filing Case No. 2005 CV 49 in the District Court for Conejos County.  (*See* Exhibit D to doc. # 35 at ¶ 5).  Case No. 2005 CV 49 is not yet concluded in the state courts.

4.      In light of this Recommendation, the court does not reach the alternative arguments presented in the Defendants' Motions.